In 1894 the first section of the act was amended, providing among other things that "the tuition of such applicant may be paid by the board of education of the township in which such applicant resides."

In 1896 this section was again amended making his admission to such high school dependant "upon the payment of tuition" and that said "tuition may be paid by the board of education of the township in which said applicant resides." Such were the provisions of the law in force in 1898 and 1899, applicable to this case.

The original act also provided for the granting of "diplomas" to successful applicants "who should deliver an oration or declamation, or read an essay in some public place provided by the clerk .of the township board of education," and section 3 provides that "the tuition of such graduates may be paid by the board of education of the township where such pupils may reside."

It would appear from the law that two classes of pupils were designated, to-wit: successful applicants at examinations before the county board of school examiners, and those granted diplomas as above indicated in addition to holding certificates.

Unless the word "may" means "shall," the plaintiff is not entitled to recover.

The rule of construction generally approved in this class of cases is the following: "The word 'may' means 'must' or 'shall' only in cases where the public interest and rights are concerned, or where the public or third person have a claim *de jure,* that the power should be exercised, or where something is directed to be done for the sake of justice or the public good."

It is the duty of the court to ascertain if possible the intention of the legislature when called upon to construe doubtful or ambiguous enactments, and the following rule is laid down in 130 Indiana, 561. "The courts will look to the whole statute and all its parts, and when such intention is ascertained, it will prevail over the literal import and strict letter of the statute; and where the meaning is doubtful and uncertain, the courts will look into the situation and circumstances under which it was enacted; to other statutes if there be any upo nthe same subject whether passed before or after the statute under consideration."

Applying this rule, how should this law be construed? The Boxwell bill as first introduced, contained the word "shall" in the third section. It was refered to the standing committee on common schools, and among other

amendments recommended, was the substitution of the general assembly has again amended the law by substituting the word "shall" for "may" in both the first and third sections. For eight years the legislature persistently refused to give the enactment mandatory operatoin upon township boards of education, though frequent efforts were made to change the phraseology to that effect.

From a somewhat careful investigation of the question submitted I fail to find that "may" as used in this statute should have the force of "shall," and for that reason judgment should be rendered for defendant.

Even if the word "may" has the significance of "shall," or if the action would be governed by the law as recently amended, would the plaintiff be entitled to recover?

If the clause in the law as it now stands means what its language imports, that successful applicants or graduates are permitted to enter any high school in the county, or in an adjoining county. "upon the payment of such tuition is a condition precedent to their admission, and the high school is not bound to admit them until it is paid.

In the first instance, who is to pay, and how? Township boards of education are authorized to levy a tax for the maintenance of the public schools within the township, and every pupil between six and twenty-one years of age is entitled to the benefits to be derived therefrom. Township high schools may be organized and supported in this way, and all pupils have access thereto; but the constitutional guarantee of "an efficient system of common schools throughout the state" does not in our opinion, impose an obligation upon township boards to pay the tuition of a select few pupils who elect to enjoy the advantages of a high school, outside the township of their residence, either in the same, or in an adjoining county. For this reason also our finding is for defendant.

*McCray & McCray,* for plaintiff.

*H. A. Mykrantz,* for defendants.

---

(Superior Court of Cincinnati.)
General Term, 1901.
## CIST v. THE CITY OF CINCINNATI.

---

A sidewalk assessment will not be sustained on appeal, when the record shows but a single resolution, standing alone, authorizing the improvement of sidewalks in all parts of the city to be constructed of all kinds of material, as such an indiscriminate joinder of sidewalk improvements cannot be upheld.

---

By the Court.

This is an action to reverse the judgment of

the court below in sustaining a sidewalk assessment. The record, by omitting the preliminary ordinance, does not present the question upon which the trial judge based his opinion in sustaining the validity of the assessment.

As the record is before us, we have a single resolution, standing alone, authorizing the improvement of sidewalks in all parts of the city, to be constructed of all kinds of material. We are of the opinion that such an indiscriminate joinder of sidewalk improvements can not be upheld. Whether each sidewalk must have a separate resolution, or whether there may be a classification of sidewalks, are questions not necessarily presented by the record, and upon which we express no opinion.

Judgment reversed.

*F. M. Coppock,* for Plaintiff.

*L. M. Morgan,* contra

---

(Superior Court of Cincinnati.)
General Term, 1901.
H. F. CORBIN & CO. v. GEORGE HAFER.

---

(1.) The parties to a lease may terminate the same at any time by mutual agreement without a distinct consideration for so doing.

(2.) A tenancy from year to year may be changed by mutual agreement between the parties to a tenancy from month to month, without any consideration passing between the parties.

---

MURPHY, J.; DEMPSEY, J., and SMITH, J., concurring.

The facts of the case, as shown by the bill of exceptions, are as follows: In 1889 the firm of Corbin, Mendel & Company rented from George Hafer, a store room on Second street, in the city of Cincinnati, by a written lease for the term of three years, at an annual rental of $1,200, payable in monthly installments of $100. At the expiration of said lease it was not renewed, but the firm continued to occupy the premises. In 1894 the firm of Corbin, Mendal & Company was dissolved, Mendel retiring and the business was continued under the name of H. F. Corbin & Company, occupying the same store. Subsequently the rent was reduced from $100 per month to $83.33 1-3 per month. So far the parties agree. Mr. Corbin claims that in January of 1894 he had a conversation with Mr. Hafer, and as a result of that conversation the terms of the rental was changed from an annual to a monthly term. This Mr. Hafer denies. In March, 1896, the firm of H. F. Corbin & Company moved from the premises and tendered the key of the store to Mr. Hafer, who declined to receive it, claiming that the firm were his tenants until December 31, 1896.

It will be seen that the controversy between the parties is, was the firm of H. F. Corbin & Company yearly tenants of Mr. Hafer by reason of holding over under the former lease, or were they tenants from month to month, as claimed by Corbin?

The court below in his charge to the jury gave the law correctly in regard to the relation of landlord and tenant, and as to the effect of a tenant holding over after the expiration of a written lease. The court also charged the law correctly as to the rights of the parties to make a new agreement by which the term should be changed from a yearly to a monthly one, but added the following:

"After the rights of the parties had become fixed, and the tenancy from year to year had become established by the conduct of the tenant in holding over, and conduct of the landlord in accepting it as a tenant from year to year, an agreement after that to change the relationship of the landlord and tenant for that year, where the rights of the parties had been fixed, an agreement between the parties to change the relationship from a tenancy for a year to a tenancy from month to month would have to be based upon some new consideration. If it were just simply an agreement, under those circumstances, without any new consideration or anything of value passing, any change in the relationship of the parties based upon such agreement would be void as to that year."

We do not think that this is a sound proposition of law. We can see no reason why the parties to the lease cannot terminate the same at any time by mutual agreement without a distinct consideration for so doing. This is too plain to need argument.

Inasmuch as Corbin & Company claimed that the tenancy was changed in 1894, and do not claim any subsequent agreement, the effect of this part of the charge was to take from the consideration of the jury the issue in the case, namely, whether from January or February, 1894, Corbin & Company held the premises as tenants from month to month or held as yearly tenants under the terms of the former written lease by holding over.

For this reason the cause is reversed and remanded for a new trial. We do not deem it necessary to notice the other errors assigned.

*Chas. W. Baker,* and *Victor Heintz,* for Plaintiff in Error.

*Wilby & Wald,* for Defendant in Error